FILED

FEB 14 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROY ALAN O'GUINN, | No. 10-17716 |
| Plaintiff - Appellant, | D.C. No. 3:07-cv-00450-LRH-VPC |
| v. | |
| NEVADA DEPARTMENT OF CORRECTIONS; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued December 1, 2011
Resubmitted February 14, 2012
San Francisco, California

Before: THOMAS and CLIFTON, Circuit Judges, and CARR, Senior District Judge.[**]

Roy Alan O'Guinn appeals the grant of summary judgment against him on

his Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA")

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable James G. Carr, Senior District Judge for the U.S. District Court for Northern Ohio, sitting by designation.

claims against the Nevada Department of Corrections and two of its officials (collectively, "NDOC"). We affirm. Because the parties are familiar with the factual and legal history of the case, we need not recount it here.

I

The district court correctly held that O'Guinn's claims sounded in medical negligence, not discrimination under the ADA and RA. Both Title II of the ADA and § 504 of the RA "prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).[1] It is well-settled that the ADA applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794. In order to establish a claim under the ADA and RA, a plaintiff must show:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such

[1]Because Congress modeled the ADA after the RA, "[t]here is no significant difference in analysis of the rights and obligations created by the [two Acts]." *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam).

Here, it is undisputed that O'Guinn has a disability. The parties dispute whether O'Guinn was "otherwise qualified," whether NDOC excluded and discriminated against him, and whether this alleged exclusion and discrimination was because of his disability. Because O'Guinn alleges that he was discriminatorily denied treatment for his disability, these issues are intertwined. *See United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144, 156 (2d Cir. 1984) (finding issues intertwined where question was whether handicapped baby was otherwise qualified and discriminated against for denial of medical treatment).

The district court correctly concluded that key elements of an ADA or RA claim cannot be reconciled with medical treatment decisions for the underlying disability. *See also Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010). The instant appeal presents the same type of claim rejected by this Court in *Simmons*. O'Guinn claims that he was discriminatorily denied mental health treatment because of his mental health disability. But he only needed the treatment because he was disabled. Here, not only is the "handicapping condition . . . related

-3-

to the condition(s) to be treated," they are inextricably linked. *Stony Brook*, 729

F.2d at 157. Thus, O'Guinn was not "otherwise qualified," and his alleged denial

of treatment was not discrimination under the ADA and RA.

O'Guinn argues that his suit does not arise from inadequate treatment but

from a total lack of treatment. However, O'Guinn fails to identify any evidence in

the record suggesting such a denial of care. He states that "lay prison personnel

blocked his access to care," but he does not specify how or cite to a portion of the

record that shows a block of access. Moreover, some of O'Guinn's contentions

contradict the record. He argues that "it is undisputed that [he] never received

mental health evaluations or treatment from August 2002 to 2006," but only cites

to the district court's finding that [he] was disabled—not that he never received

evaluation or treatment. O'Guinn thus fails to distinguish his claim from other

ADA claims that allege inadequate care.

In sum, O'Guinn challenges the adequacy of his mental health care, a

challenge that cannot be properly brought under the ADA and RA.

II

Even if O'Guinn could appropriately raise his ADA and RA claims regarding the adequacy of his mental health care, the district court properly granted summary judgment for NDOC on the discrimination and the denial of access claims.

O'Guinn presents two ways in which he suffered discrimination on account of his disability: discontinuation of mental health treatment, and disciplinary segregation. First, O'Guinn argues that the NDOC staff notes characterizing his behavior as, for example, "rude" and "annoying" show that his treatment was stopped because of that behavior. The district court correctly observed that these characterizations were contemporaneous notes on O'Guinn's behavior, not conclusive assessments. There is no evidence linking these observations with any deprivation of treatment and O'Guinn has admitted that he was discharged from the MHU for "unknown reasons." No reasonable factfinder could conclude that O'Guinn was discriminatorily discharged from the MHU on account of his disability.

Second, O'Guinn argues that NDOC officials punished him for manifesting symptoms of his mental disability. O'Guinn concedes that he was disciplined for misconduct. But he again asserts a chain of causation: because he was untreated,

he committed misconduct; because of his misconduct, he was disciplined. This chain is analogous to the one that this Court rejected in *Simmons*. 609 F.3d at 1021-22. Because O'Guinn failed to produce evidence showing that the disciplinary action was on account of his disability–rather than on account of his misconduct–there is no disputed issue of material fact on this point.

O'Guinn further argues that because his disability was left untreated, he was unaware of prison programs and effectively denied access. Again, his chain of causation resembles the one we rejected in *Simmons*. *Id.* The district court correctly concluded that O'Guinn's argument was "too attenuated," and that there was a dearth of legal authority holding "that a defendant's failure to treat a plaintiff's mental disability, the effects of which renders him unaware of a program or service, constitutes a cognizable exclusion from or denial of available programs." The district court properly granted summary judgment on these claims.

Given our resolution of the claims, we need not reach any other issue urged by the parties.

**AFFIRMED.**